UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FRANCISO MARTINEZ, WASHINGTON MACIAS, DAVID ALFARO and JORGE JANDRES on behalf of themselves and others similarly situated,

                        Plaintiff,

            -against-

ROBERT MONTGOMERY, and DEALER PREP SERVICES INC.,

                        Defendants.

---

Case No.:

COMPLAINT

FLSA COLLECTIVE ACTION
RULE 23 CLASS ACTION

**Jury Trial Demanded**

Plaintiffs FRANCISO MARTINEZ ("FRANCISCO"), WASHINGTON MACIAS ("WASHINGTON"), DAVID ALFARO ("DAVID") and JORGE JANDRES ("JORGE") on behalf of themselves and others similarly situated current and former employees of Defendants, and those who elect to opt into this action (the "FLSA Collective Plaintiffs"), complaining of the Defendants ROBERT MONTGOMERY ("ROBERT") and DEALER PREP SERVICES INC. ("DEALER PREP.") (all defendants "Defendants"), herein by their attorneys, MONTEIRO & FISHMAN LLP, upon information and belief, and at all times hereinafter mentioned, allege as follows:

**NATURE OF THE ACTION**

1. Plaintiffs allege on behalf of themselves, the Class, and the FLSA Collective Plaintiffs, that they are entitled to, under 29 U.S.C. § 201 *et seq.* ("FLSA"), *inter alia*, from Defendants: (i) unpaid wages for overtime work performed, (i) liquidated damages, (iii) attorneys' fees, (iv) interest, and (v) all costs and disbursements associated with this action.

2. Plaintiffs further alleges, *inter alia*, that they are entitled to, under New York Labor Law, Art. 6, §§ 190 *et seq.* and Art. 19, §§ 650 *et seq.*, and N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 142, 146 (collectively "NYLL") from Defendants: (i) unpaid wages for overtime work performed; (ii) liquidated damages for failure to pay overtime premium and spread of hours pay;

(iii) liquidated damages for failure to furnish Plaintiff a notice and acknowledgment at the time of hiring; (iv) attorneys' fees; (v) interest;; and (vi) all costs and disbursements associated with this action.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337 and over the New York state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has also jurisdiction of all the claims herein under FLSA at 29 USC §216(b) and 28 USC § 1331.

5. Venue is proper as Defendants conduct business in Nassau County as the wrongs complained of herein occurred in Nassau County and under 28 U.S.C. § 1391.

## PARTIES

*Plaintiff*

6. FRANCISCO resides in Suffolk County, New York.

7. WASHINGTON resides in Bronx County, New York.

8. DAVID resides in Suffolk County, New York.

9. JORGE resides in Suffolk County, New York.

*Defendants*

10. DEALER PREP. is a business that services various car dealerships in New York. The services they provide include vehicle valet, greeting clients, vehicle washing/cleaning, vehicle detailing, vehicle rental registration, client transporting, and auto parts pick-up and delivery.

11. DEALER PREP. is owned, managed and operated by ROBERT.

12. DEALER PREP. has a N.Y. Department of State No. 6330768 and identities ROBERT MONTGOMERY at 77 Westminster Road, Garden City, NY 11530 as its agent of record according to N.Y. Department of State records.

13. ROBERT resides at 77 Westminster Road, Garden City, NY 11530.

14. At all relevant times, Defendants employed more than two persons and have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

15. Upon information and belief, during each of the three years preceding the date of this complaint, Defendants have had gross revenues in excess of $500,000 per year.

16. At all relevant times, Plaintiffs, in their work for Defendants, have handled and worked on goods or materials that have been moved in, or produced, for commerce.

17. At all relevant times, the Defendants were each an "enterprise engaged in commerce or in the production of goods for commerce" under FLSA 29 U.S.C. § 203.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

18. Plaintiffs bring these claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. 216(b), on behalf of all non-exempt persons employed by Defendants at any New York location on or after the date that is three years before the filing of the Complaint in this case as defined herein ("Collective Plaintiffs").

19. At all relevant times, Plaintiffs and the other Collective Plaintiffs are, and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them one and one half times their hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other Collective Plaintiffs.

20. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 16(b) of the FLSA, 29 U.S.C. 216(B). The Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names

and addresses are readily available from the Defendants. Notice can be provided to the Collective Plaintiffs via first class mail to the last address known to Defendants.

21. The named Plaintiffs are representative of those other workers and are acting on behalf of Defendants' current and former employees' interest, as well as their own interest in bringing this action.

## CLASS ACTION ALLEGATIONS

22. Plaintiffs bring their claims pursuant to CPLR §§ 901 and 902, on behalf of all non-exempt persons employed by Defendants at any New York location on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

23. All said persons, including Plaintiffs, are referred to herein as the "Class" or "The Class members." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under the CPLR.

24. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than twenty (20) members of the Class.

25. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate

practices of Defendants, as alleged herein. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26. Plaintiffs can fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. In addition, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of

conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28. Upon information and belief, Defendants and other employers throughout the state violated the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

29. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a) Whether Plaintiffs and the Class are non-exempt from entitlement to overtime compensation for all hours worked in excess of 40 hours per week;
>
> b) What policies, practices and procedures Defendants implemented regarding payment of overtime compensation, spread of hours, and breaks and meal periods;
>
> c) Whether Defendants failed to pay Plaintiffs and the Class overtime compensation for all hours worked in excess of forty (40) hours per week within the meaning of the NYLL Article 19 § 650 *et seq.* and the supporting NYDOL Regs., 12 N.Y.C.R.R. Part 142;
>
> d) Whether Defendants failed to pay Plaintiffs and the Class spread of hours pay by failing to pay an additional hour's pay when they worked more than ten (10) hours in a day, as provided by 12 N.Y.C.R.R. sect. 142-2.4;
>
> e) Whether Defendants failed to provide Plaintiffs and the Class breaks and meal periods in violation of NYLL sect. 162(4);

    f) Whether Defendants wrongfully interfered with the rights of Plaintiffs and the Class to immediate possession of earned wages and, thus, engaged in unlawful conversion of their compensation;

    g) The nature and extent of the Class-wide injury and the appropriate measure of damages for the Class; and

    h) Whether Defendants' failure to pay Plaintiffs and overtime compensation for all hours worked in excess of forty (40) hours per week, spread of hours pay was done willfully or with reckless disregard for the applicable federal and state wage and hours laws, and whether Defendants' failure to afford proper meal and break period was done willfully or with reckless disregard for the applicable federal and state wage and hours laws.

## STATEMENT OF FACTS

30. ROBERT is the principal of DEALER PREP.

31. ROBERT is a manager of DEALER PREP.

32. ROBERT participated, controlled, directed, and had/has operational control of the day-to-day operations of DEALER PREP.

33. Upon information and belief, ROBERT is: the President, Chief Executive Officer or a corporate officer of DEALER PREP., owns, is a majority shareholder, an agent of, manager of, has active control of DEALER PREP., has operational control of DEALER PREP., sets the weekly work-hours of the employees, has the power to establish the wages of the employees of DEALER PREP., implemented and supervised the wage and hour practices and policies relating to employees, controlled significant business functions of DEALER PREP., determined employee salaries, made hiring decisions, maintains the employee records of DEALER PREP., directed the managers and employees of DEALER PREP. as to duties and tasks of the employees thereof, acts directly and indirectly for and in the interest of DEALER PREP., and hires and fires employees thereof.

34. ROBERT exercises sufficient control of the operations of DEALER PREP. so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

35. DEALER PREP. exercises sufficient control of the operations of the Plaintiffs so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

36. Defendants were in charge of hiring Plaintiffs.

37. Defendants decided the job duties that Plaintiffs perform.

38. Defendants determined Plaintiffs' hourly rate of pay.

39. Defendants determined Plaintiffs' work schedule.

40. Defendants determined the number of hours that Plaintiffs worked.

41. Defendants managed Plaintiffs' employment, including the amount of overtime that they worked each workweek.

42. Defendants supervised and controlled the conditions of Plaintiffs' employment.

43. Defendants maintained Plaintiffs' employment records.

44. Defendants have dictated, controlled, and ratified the wage and hour and related employee compensation policies.

45. Defendants were aware of Plaintiffs' work hours but failed to pay Plaintiffs the full and proper amount of wages they were entitled to each week.

46. FRANCISCO was employed by Defendants from June 2020 to June 2024. His duties included being a valet at car dealerships, meeting with clients, parking and retrieving automobiles, amongst other duties. He generally worked about 54 to 59 hours in a work week – but sometimes more.

47. FRANCISCO was paid by DEALER PREP. check, in the memo or "for" line was a work week that indicated the work week the check was intended to cover. Other information on the check included the date, the amount, and payee. The check did not include a pay statement containing the following information: employer's address and phone number, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net

wages, itemized deductions, and/or itemized allowances. He was told he was paid $15.75/hour in 2020; then $18/hr.; then $20/hr. to $28/hr. until separation. He was paid his hourly rate for all hours worked and not paid an overtime premium for those hours worked over 40 in a work week.

48. During the work-week of January 23 to 28, 2024, FRANCISCO worked about 63 hours, but was only paid $1,764.00 by company check, at a rate of $28/hr. During that work-week, FRANCISCO was not paid an overtime premium.

49. WASHINGTON was employed by Defendants from April 2023 to the present. His duties included being a valet at car dealerships, parking and retrieving automobiles, driving to various dealerships/facilities to retrieve and deliver automobile parts. He generally worked between 48.5 to 57.5 hours in a work week – but sometimes more.

50. WASHINGTON was paid by DEALER PREP. check, in the memo or "for" line was a work week that indicated the work week the check was intended to cover. Other information on the check included the date, the amount, and payee. The check did not include a pay statement containing the following information: employer's address and phone number, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances. He was told he was paid $16/hour in 2023; then $17/hr.; then $18/hr. at the present. He was paid his hourly rate for all hours worked and not paid an overtime premium for those hours worked over 40 in a work week.

51. Upon information and belief, during the work-week of January 23 to 28, 2024, WASHINGTON worked about 50 hours, but was only paid $900.00 by company check, at a rate of $18/hr. During that work-week, WASHINGTON was not paid an overtime premium.

52. DAVID was employed by Defendants from about April 2021 to October 2024. His duties included being a valet at car dealerships, meeting and greeting clients, parking and retrieving automobiles, washing vehicles, amongst other duties. He generally worked about 53-54 hours a

week – but sometimes more.

53. DAVID was paid by DEALER PREP. check, in the memo or "for" line was a work week that indicated the work week the check was intended to cover. Other information on the check included the date, the amount, and payee. The check did not include a pay statement containing the following information: employer's address and phone number, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances. His initial pay was $16/hour in 2020, then $17/hr., then $18/hr., then $19/hr., then $21/hr. until separation. He was paid his hourly rate for all hours worked and not paid an overtime premium for those hours worked over 40 in a work week.

54. During the work-week of February 5 to 11, 2024, DAVID worked about 55 hours, but was only paid $1,045 by company check, at a rate of $19/hr. During that work-week, DAVID was not paid an overtime premium.

55. JORGE was employed by Defendants from January to December 2024. His duties included being a valet at car dealerships, meeting with clients, parking and retrieving automobiles, retrieving auto parts, amongst other duties. He generally worked about 54 – 65 hours in a work week – but sometimes more.

56. JORGE was paid by DEALER PREP. check, in the memo or "for" line was a work week that indicated the work week the check was intended to cover. Other information on the check included the date, the amount, and payee. The check did not include a pay statement containing the following information: employer's address and phone number, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances. He was told he was paid $17/hour, then $20/hr. He was paid his hourly rate for all hours worked and not paid an overtime premium for those hours worked over 40 in a work week.

57. During the work-week of January 15 to 21, 2024, JORGE worked about 44 hours, but was only paid $748.00 by company check, at a rate of $17/hr. During that work-week, JORGE was not paid an overtime premium.

58. Plaintiffs did not supervise any other employee and had no supervisory authority whatsoever over any other person.

59. While Plaintiffs and Class Members, worked in excess of forty hours a week, Defendants willfully failed to pay them minimum wage and overtime compensation for the overtime hours worked.

60. Also, Plaintiffs and Class Members, typically worked more than ten hours each day during the week, yet Defendants willfully failed to pay them spread of hours wages.

61. When Defendants hired Plaintiffs and Class Members, they never furnished them with a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

62. Defendants never paid Plaintiffs and Class Members, wages with a pay statement containing the following information: employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances.

63. Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights, and employee rights by the NYLL.

64. During all relevant times, Defendants failed to maintain accurate and sufficient records of those hours Plaintiffs worked and those wages paid to them.

65. Upon information and belief, Defendants paid Plaintiffs for most of their hours at straight pay but failed to pay Plaintiffs for all hours worked.

66. Defendants knew that nonpayment of overtime would economically injure Plaintiffs, the FLSA Collective Plaintiffs and members of the Class, and violated State and Federal laws.

67. By the foregoing reasons, Defendants are liable to Plaintiffs, and the Class, in an amount to be determined at trial, plus interest, attorneys' fees and costs, and liquidated damages.

68. Upon information and belief, Defendants' violations were willful.

69. By the foregoing reasons, Defendants have violated Labor Law § 190 *et seq.* and are liable to Plaintiffs and other members of the putative class in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

70. Defendants committed the following acts against Plaintiffs and members of the Class knowingly, intentionally and willfully.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq*.**
**Brought by Plaintiffs on Behalf of Themselves,**
**The FLSA Collective Plaintiffs, and the Class)**

71. Plaintiffs, on behalf of themselves, Collective Plaintiffs, and the Class, reallege and incorporate by reference all previous paragraphs.

72. Defendants never provided Plaintiffs with notice that any tips would be used as a credit against wages.

73. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiffs for those hours worked in excess of forty hours per workweek.

74. At all relevant times, Defendants has and operated under a decision, policy and plan,

and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Plaintiffs and Class Plaintiffs at one and one half times the minimum wage for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

75. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the Class at the required overtime rate of one and a half times the federal minimum wage for hours worked in excess of forty (40) hours per workweek.

76. Plaintiffs, on behalf of themselves and the Class seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(New York Overtime Violations)**
**(New York Minimum Wage Act, N.Y. Stat. §§ 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 142 – 2.2 and 146-1.4**
**Brought by Plaintiffs on Behalf of Themselves and the Class)**

77. Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

78. Defendants willfully violated Plaintiffs' rights by failing to pay them, and the Class, overtime compensation at a rate of not less than one-half times his hourly wage for each hour worked in excess of forty hours per workweek, violating 12 N.Y.C.R.R. §§ 146-1.4, 142- 2.2.

79. As a result of Defendants' willful and unlawful conduct, Plaintiffs and the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and- post judgment interest, costs and attorney's fees, as provided by N.Y. Lab. Law § 663.

**THIRD CLAIM FOR RELIEF**
**(New York Notice Requirements, including N.Y. Lab. L. §§195 and 198)**

**(Brought by Plaintiffs on Behalf of Themselves, Collective Plaintiffs and the Class)**

80. Plaintiffs, on behalf of themselves, Collective Plaintiffs, and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

81. Defendants failed to furnish to Plaintiffs at the time of hiring a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of N.Y. Lab. Law § 195(1) and 12 N.Y.C.C.R. § 146-2.2.

82. The written notices serve "as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves." Denying Plaintiffs such notice impinged on Plaintiffs' interests in not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay.

83. Due to Defendants' violating N.Y. Lab. Law § 195(1), Plaintiffs, and the Class, are entitled to recover from Defendants liquidated damages, up to a maximum of $5,000.00 per Plaintiff, reasonable attorney's fees, and costs and disbursements of this action under N.Y. Lab. Law § 198(1-b).

**FOURTH CLAIM FOR RELIEF**
**(New York Wage Statement Requirements, including N.Y.**
**Lab. L. §195 and N.Y. Comp. Code R. & Regs. 12, § 146-2.3)**
**(Brought by Plaintiffs on Behalf of Themselves, Collective Plaintiffs and the Class)**

84. Plaintiffs, on behalf of themselves, Collective Plaintiffs, and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

85. Defendants paid Plaintiffs, and the Class, wages, either by cash, or with a pay stub

containing the following missing and/or willfully incorrect information: employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances, violating N.Y. Lab. Law § 195(3) and 12 N.Y.C.C.R. § 146-2.3.

86. Additionally, Defendants are required to keep records for six years, which must include accurate records of employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions and/or itemized allowances.

87. The wage statements serve "as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves." Denying Plaintiffs such notice impinged on Plaintiffs' interests in not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay.

88. Due to Defendants violating N.Y. Lab. Law § 195(3), Plaintiffs are entitled to recover from Defendants liquidated damages, up to a maximum of $5,000.00, reasonable attorney's fees, and costs and disbursements of the action, pursuant to N.Y. Lab. Law § 198(1-d).

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs, and the Class, demand a trial by jury on all issues so triable as a matter of right.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays this Court grant as relief the following:

a. To designate this action as a class action and/or a collective class, and appoint the plaintiff and the plaintiffs' attorneys to represent the class members;

b. Declaring that the practices complained of herein are unlawful under the FLSA and the N.Y. Lab. Law;

c. Awarding all unpaid compensation, overtime, interests, costs and fees due under the FLSA and NYLL;

d. Awarding Plaintiff liquidated damages due to Defendants' willful failure to pay overtime compensation, under the FLSA;

e. Awarding Plaintiff liquidated damages as a result of Defendants' failure to furnish a notice at the time of hiring under the N.Y. Lab. Law;

f. Awarding Plaintiff liquidated damages as a result of Defendants' failure to furnish correct statements with each payment of wages under the N.Y. Lab. Law;

g. Awarding Plaintiffs pre-judgment interest;

h. Awarding Plaintiffs post-judgment interest;

i. Awarding Plaintiffs' attorneys fees and costs; and

j. Granting such other and further relief as this Court deems just and proper.

Dated: April 24, 2025

By: /s/
Marcus Monteiro
*mmonteiro@mflawny.com*
**MONTEIRO & FISHMAN LLP**
91 N. Franklin Street, Suite 108
Hempstead, New York 11550
Telephone: (516) 280.4600
Facsimile: (516) 280.4530
Attorneys for Plaintiff, Collective Plaintiffs and Class Plaintiffs